MORRIS FEINBERG et al., as Executors of the Estate of JACOB N. FEINBERG, Deceased, Plaintiffs, *v.* BOULEVARD SANITARIUM CORPORATION et al., Defendants.

Supreme Court, Special Term, Queens County, May 4, 1948.

*Turnbull & Bergh* for plaintiffs.

*Schlesinger & Krinsky* for defendants.

STODDART, J. Action for a declaratory judgment and an accounting. The evidence reveals that in 1927, the ten individual defendants and the plaintiffs' testate, all physicians, formed the corporate defendant for the purpose of erecting and operating a hospital or sanitarium in Queens County. A hospital was built and operated by the corporation for a short time, but after receiving advice from State officials that it was improper for the corporation to operate the hospital, it was decided on October 30, 1929, that the corporation would lease the building and its equipment to the eleven physicians (plaintiffs' Ex. 1) and a separate agreement (plaintiffs' Ex. 2) relating to the lease and the operation of the hospital was executed on that date.

The corporation agreed, by the terms of plaintiffs' Exhibit 2, to maintain the building and equipment, to operate the kitchen, to supply food for the patients, to employ and direct all administrative help. The lessees, the physicians, were to employ, pay and direct all professional help, such as nurses, internes, etc. Books of account were to be kept upon the premises. All moneys received in the operation of the hospital, excluding fees due to the physicians from their patients for professional services, were to be received by the corporation which would pay all the expenses of the hospital and all the expenses chargeable to the physicians for the professional help. After the payment of all expenses " The balance remaining will be divided eighty-five (85%) per cent, to the Corporation as and for use and occupation of the premises intended to be leased pursuant to the instrument of lease executed contemporaneously with the making of this agreement, and the remaining fifteen (15%) per cent, shall belong and be payable to the 'Physicians '."

Paragraphs " Sixth " and " Seventh " of said Exhibit 2 read as follows:

" Sixth: The purpose and intent of this agreement is that all matters affecting and requiring the services of a physician as such, or in any way related to the practice of medicine, are intended to be and are exclusively within the province of the said ' Physicians ', the Corporation merely maintaining the said building available as a sanitarium for the use of the ' Physicians ' referred to in this instrument, or any other physicians acceptable to them whose patient or patients will be the guests of said sanitarium.

" Seventh: The nature of the service here performed by the ' Physicians ' or any of them being personal in its nature, this agreement is intended to be a personal contract between the Corporation and the said ' Physicians ' and the survivors of them. Accordingly, in the event of the total incapacity or disability of any one of said ' Physicians ' or in the event that any one of the said ' Physicians ' shall cease to practice medicine or be precluded from so doing, this agreement, with respect to the benefits or assumption of liability on the part of the said ' Physicians ' thus deceased, totally disabled or totally incapacitated, shall cease and terminate and shall be enforcible only as against the surviving ' Physicians '."

On January 5, 1932, and on February 22, 1933, agreements (plaintiffs' Exs. 3, 4) were made which modified the agreement (plaintiffs' Ex. 2) of October 30, 1929. In each of the later agreements, it was expressly provided that the parties desired to modify the terms of the first agreement (Ex. 2) " insofar as the same relate to the rental payable to the Corporation, and the division of the income and receipts of said sanitarium."

Under the provisions of Exhibit 3 (the agreement of January 5, 1932), the gross income of the hospital was to be divided before the deduction of any expenses, with 60% for the corporation and 40% for the physicians. From the 40% share of the physicians, the corporation was authorized, on behalf of the physicians, to pay all the professional help and the balance then remaining was payable to the physicians. Paragraphs " Third " and " Fourth " of Exhibit 3 read as follows:

" Third: Except as herein specifically modified, each and every term, covenant and condition of the aforesaid Agreement and Agreement of Lease dated October 30th, 1929, is hereby ratified and continued in full force and effect.

" Fourth: This agreement shall bind and enure to the benefit of the heirs, representatives, successors and assigns of the respective parties hereto."

Under the provisions of Exhibit 4 (the agreement of February 22, 1933), it was provided that from the gross income of the hospital all of the operating expenses connected with the management and maintenance of the hospital, all expenses relating to the building and premises such as taxes, interest on the mortgage, insurance, etc., an amount equal to the Federal and State income taxes which the corporation would have to pay, and a sum equal to 5% of the principal of the outstanding bonds should be retained by the corporation as rental for the use and occupation of the premises. The corporation was authorized to pay

the expenses chargeable to the physicians and it was to pay over the balance to the physicians. Paragraphs " 4 ", " 5 " and " 6 " of Exhibit 4 read as follows:

" 4: Except as herein specifically modified, each and every term, covenant and condition of the aforesaid Agreement and Agreement of Lease dated October 30th, 1929, is hereby ratified and continued in full force and effect.

" 5: And it is agreed by and between the physicians, that in the event of the death of any one or more of said physicians that the survivors shall have and hereby are given the right, power and authority and such survivors are hereby constituted the agents of the aforesaid physicians, their legal representatives and assigns, without power of revocation to enter into any and all agreements with the corporation which such survivors may deem necessary or desirable, further modifying and amending the aforesaid Agreement and Agreement of Lease, the intention of the physicians being that in the event of the death of any one or more of them, that the consent of the legal representative or representatives of such deceased physician or physicians to such further modification shall not be necessary or required.

" 6: This agreement shall bind and enure to the benefit of the heirs, representatives, successors and assigns of the respective parties hereto."

The income was distributed in accordance with the agreement of 1929 as modified by the agreement of 1933 until 1943. Dr. Feinberg died on February 10, 1943, and his estate was paid the sum of $900 which represented the decedent's share of the profits from June 1, 1942, to the date of his death.

The issue is: Did Dr. Feinberg's interest in the profits terminate upon his death, or are his heirs entitled to the share Dr. Feinberg would receive, were he alive?

The plaintiffs claim that the agreement of October 30, 1929, as amended by the subsequent agreements of 1932 and 1933, sustains the right of the heirs to a share of the profits.

It is the defendants' contention that, as paragraph " Seventh " of the 1929 agreement was not expressly modified by the subsequent agreements, Dr. Feinberg's interest terminated upon his death.

The agreements do not provide what personal services a physician is to render in return for his share of the profits. It might be inferred that the 15% referred to in the 1929 agreement (plaintiffs' Ex. 2) was in payment for incidental services rendered by the physicians and the benefits derived from the use of the physicians' names in advertising, but when the defendants

reveal by the statement submitted in lieu of their examination before trial (defendants' Ex. B) that the net income was distributed in exact accordance with their respective stockholdings in the corporation, that inference is not justified.

If, as the defendants contend, death terminates the interest of a physician in the profits, paragraphs "5" and "6" of Exhibit 4 are meaningless, and were thoughtlessly placed in the agreement of 1933. I cannot arrive at a similar conclusion. To my mind, to state that the surviving physicians shall enter into all future agreements with the corporation on behalf of the heirs or assigns of a deceased physician, means that the physician's interest was not terminated by death, that his heirs have an interest in the leasehold and in the profits obtained therefrom.

It is logical to assume that the physicians never intended at the commencement of the twenty-year period of the leasehold that all of the profits would belong to one or several physicians who survived. It was possible that death would claim many of them before that period elapsed, although only one, Dr. Feinberg, has in fact died. It is also logical to assume that when the physicians reduced the corporation's share of the profits from 85% to 0%, they intended to substitute participation by the physicians and their heirs in the profits of the leasehold for the right which they or their heirs had to the dividends from the corporation.

Accordingly, judgment will be granted in favor of the plaintiffs, declaring that the estate of Jacob N. Feinberg, deceased, is possessed of a continuing interest in the aforesaid agreements and leasehold, directing the defendants to account for all moneys received and expended from June 1, 1942, to date, and directing the payment of such portions of the profits due to the plaintiffs with interest on the respective portions from the dates when they should have been paid. No costs. Thirty days' stay, sixty days to make a case.

Submit judgment on notice.